IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CAROL G. DWYER and
ELIZABETH ELLEN FLUHARTY,

    Plaintiffs,

v.                              Civil Action No. 5:14CV21
                                          (STAMP)
RANGE RESOURCES-APPALACHIA, L.L.C.
and CHESAPEAKE APPALACHIA, L.L.C.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT CHESAPEAKE APPALACHIA,**
**L.L.C.'S MOTION FOR SUMMARY JUDGMENT**

I.   Procedural History

This civil action concerns the assignment of the plaintiffs' oil and gas leases, and interpretation of certain clauses found within the plaintiffs' respective leases. In particular, the plaintiffs seek a declaratory judgment that would invalidate portions of the lease. The plaintiffs originally filed this civil action in the Circuit Court of Brooke County, West Virginia. After removing the civil action to this Court, both defendants filed motions to dismiss. ECF Nos. 7 and 11. Range Resources-Appalachia, L.L.C. ("Range") filed a motion to dismiss, arguing that it had no present interest in the leases. Chesapeake Appalachia, L.L.C. ("Chesapeake") filed a partial motion to dismiss, arguing that: (1) the purported lack of a notice of assignment is an invalid basis to void the leases because the plaintiffs contractually waived the notice of assignment; (2)

allegedly improper notarization of the leases fails to invalidate them; (3) the plaintiffs' fraudulent inducement claim is time-barred; and (4) the plaintiffs received adequate consideration. This Court granted both defendants' motions to dismiss. ECF No. 21. The plaintiffs later filed a motion to remand, which this Court denied. ECF Nos. 14 and 20, respectively.

The remaining defendant, Chesapeake, filed a motion for summary judgment (ECF No. 31) regarding the plaintiffs' two remaining claims. Those two claims are the following: (1) "whether the leases are void for lack of a definite term and therefore unconscionable" and (2) "whether the leases expired by their own terms after five years." ECF No. 23. In support of its motion, Chesapeake first points to the language in the lease. Early in the leases, they state that the term of the lease is five years "and so much longer thereafter as oil, gas, and/or coalbed methane gas or their constituents are produced or are capable of being produced on the premises in paying quantities in the judgment of [Chesapeake]." Later, the leases each contain a clause ("Paragraph 22") that states "[r]egardless of any language to the contrary, this is a paid up lease for a period of **five (5)** years". ECF No. 31 (emphasis in originals). Chesapeake claims that Paragraph 22 fails to eliminate or cancel out the terms of the first clause. Because the leases are governed by contract law, Chesapeake argues that the plain language of the leases must control. Further, because the

2

terms of the leases are clear and unambiguous, Chesapeake argues that they are not void due to a lack of a definite term. For those reasons, Chesapeake claims this Court should grant its motion for summary judgment.

The plaintiffs then filed a response in opposition. ECF No. 33. The plaintiffs first argue that Paragraph 22 contradicts the identical habendum clauses found in their leases. In particular, both leases contain Paragraph 22, which again states that "[r]egardless of any language to the contrary, this is a paid up lease for a period of **five (5)** years." ECF No. 31 (emphasis in originals). The plaintiffs argue that Paragraph 22 is clear and unambiguous, and therefore it should be given its full effect. Given its full effect, the plaintiffs claim that Paragraph 22 restricts the leases to a term of only five years. Further, because Paragraph 22 allegedly is so clear and unambiguous, the plaintiffs claim that no extrinsic evidence should be considered. The plaintiffs also assert that the parties intended for Paragraph 22 to be considered a provision separate from the habendum clause, rather than read in conjunction with the other provisions of the lease. For those reasons, the plaintiffs request that this Court deny the motion for summary judgment. Following the plaintiffs' response, Chesapeake timely filed its reply. ECF No. 34. In that reply, Chesapeake restates its initial arguments, and also asserts that the parties' intent when crafting the lease is clear by the

plain language of the lease. Accordingly, Chesapeake again requests that this Court grant its motion. For the reasons set forth below, Chesapeake's motion is granted.

## II. Facts

The plaintiffs each entered into separate oil and gas leases with Range, formerly called Great Lakes Energy. Each lease contained the following clause ("habendum clause"):

> [T]his lease shall continue in force and the rights granted hereunder be quietly enjoyed by [Chesapeake] for a term of **Five (5) Years** and so much longer thereafter as oil, gas, and/or coalbed methane gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the judgment of [Chesapeake], or as the premises shall be operated by [Chesapeake] in the search for oil, gas, and/or coalbed methane gas[.]

ECF No. 31 Exs. 2 and 4 (emphasis in originals). According to their respective leases, the plaintiffs each received a "paid-up delay rental," where plaintiff Fluharty received $5,200.00 and plaintiff Dwyer received $7,018.50. Id. Both leases also contain Paragraph 22, referenced earlier, that states that "[r]egardless of any language to the contrary, this is a paid up lease for a period of **five (5) years**." Id. (emphasis in originals). Those leases were later assigned to Chesapeake, the current lessee. Regarding those assignments to Chesapeake, the plaintiffs assert that Range assigned the leases without notifying the plaintiffs or seeking their consent. The plaintiffs, however, did not assert that the

4

leases either prohibited the assignments or required that Chesapeake notify the plaintiffs of any assignment.

The plaintiffs made various allegations as to why this Court should declare the leases and subsequent assignments void. First, the plaintiffs asserted that John Liggett, a representative of Range, made false representations that drilling would begin on the plaintiffs' property within two years. Further, the plaintiffs claimed that Mr. Liggett fraudulently induced the plaintiffs to sign the lease agreements. They argued that Mr. Liggett said that if the plaintiffs did not immediately agree to the lease, he would reduce the lease compensation by one half. The plaintiffs then alleged that the leases were wrongfully notarized. The plaintiffs also asserted that the leases were void for lack of adequate consideration, calling the amount paid to the plaintiffs a "paltry sum." Lastly, the plaintiffs argued that the leases were void for lack of a definite term and unconscionable on their face because the language of the leases permitted the defendants to possess a leasehold interest for an indefinite time in the future.

### III. Applicable Law

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The

party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the Supreme Court of the United States noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial ." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074, 112 S. Ct. 973, 117 L.Ed.2d 137 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. Discussion

As stated earlier, Chesapeake's motion for summary judgment concerns the two remaining claims in this civil action, which are the following: (1) "whether the leases are void for lack of a definite term and therefore unconscionable" and (2) "whether the leases expired by their own terms after five years." ECF No. 23. Essentially, the two remaining claims can be construed as an issue of interpreting the language of the leases, which contain identical provisions at issue.

Under West Virginia law, mineral leases, including oil and gas leases, are considered both a conveyance and a contract. Jolynne Corp. v. Michels, 446 S.E.2d 494, 499-500 (W. Va. 1994). Because of the contractual nature of oil and gas leases, principles of contract law generally govern their interpretation. See id.; Iafolla v. Douglas Pocahontas Coal Corp., 250 S.E.2d 128 (W. Va. 1978) (applying contract principles to an oil and gas lease). Accordingly, "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, Cotiga Dev. Co. v. United Fuel Gas Co., 128 S.E.2d 626 (W. Va. 1962); see also syl. pt. 2, Orteza v. Monongalia County Gen. Hosp., 318 S.E.2d 40 (W. Va. 1984) ("Where the terms of a contract are clear and unambiguous, they must be applied and not construed."). As defined under West Virginia law, an ambiguity "consists of susceptibility of two or more meanings and uncertainty as to which was intended. Mere informality in phraseology or clumsiness of expression does not make it ambiguous, if the language imports one meaning or intention with reasonable certainty." Syl. Pt. 13, State v. Harden, 58 S.E. 715 (W. Va. 1907). Phrased another way, "Agreements are not necessarily ambiguous because the parties disagree as to the meaning of the language of the agreement." Orteza, 318 S.E.2d at 43 (quoting Richardson v. Econo-Travel Motor

8

Hotel Corp., 553 F. Supp. 320 (E.D. Va. 1982)); see also Syl. Pt. 3, Iafolla, 250 S.E.2d at 128 ("A written contract merges all negotiations and representations which occurred before its execution, and in the absence of fraud, mistake, or material misrepresentations extrinsic evidence cannot be used to alter or interpret language in a written contract which is otherwise plain and unambiguous on its face.").

It should also be noted that, within the context of oil and gas leases, habendum clauses similar to the one at issue are not new or surprising. As the Supreme Court of Appeals of West Virginia stated, "A habendum clause in an oil and gas lease (or other mineral lease) providing for a short primary term and a secondary term for 'so long as' production in paying quantities or operations therefor continue, or similar language, conveys a 'determinable' interest, that is, an interest subject to a special limitation. Such an interest automatically terminates by its own terms upon the occurrence of the stated event, namely, expiration of the primary term without production or operations at such time, or the cessation of production or operations during the secondary term." McCullough Oil, Inc. v. Rezek, 346 S.E.2d 788, 794 (W. Va. 1986)); see Wilson v. Xander, 387 S.E.2d 809, 811 (W. Va. 1989). Therefore, under West Virginia law, including habendum clauses within oil and gas leases is a recognized practice.

At first glance, the habendum clauses at issue appear unambiguous. As provided under Berkeley County Public Service Dist. v. Vitro Corp. of America, "[t]he question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. Pt. 1, 162 S.E.2d 189 (W. Va. 1968). Here, the habendum clauses clearly provide the standard "primary" and "secondary" terms found in such clauses. The plaintiffs argue, however, that the admittedly unambiguous leases still contain conflicting and overriding terms. In particular, the plaintiffs point to Paragraph 22, arguing that it restricts the duration of the leases to only five years. See ECF No. 31. The plaintiffs allege that Paragraph 22 cancels out the "secondary" term within the habendum clause, referring to the "or so long thereafter" portion of the clause. Thus, according to the plaintiffs, the lease has a duration of only five years.

The plaintiffs' argument, however, is without merit. Looking at the record before this Court, Paragraph 22 and the habendum clause neither conflict nor override any of their respective portions. Rather, Paragraph 22 only pertains to the payment of the primary period, meaning that no further payments are necessary during the five-year primary term. To read that Paragraph 22 directly conflicts with the habendum clause is inaccurate. The plaintiffs suggest that Paragraph 22 was not intended to be read in conjunction with the habendum clauses and other provisions within

10

the leases.  See ECF No. 33.  Under West Virginia law, that is not how this Court is supposed to read the lease, or any contracts for that matter.  As West Virginia law provides, "'[a] contract must be considered as a whole, effect being given, if possible, to all parts of the instrument.'"  Moore v. Johnson Service Co., 219 S.E.2d 315 (W. Va. 1975)(quoting Syl., Clayton v. Nicely, 182 S.E. 569 (W. Va. 1935)).  Therefore, this Court cannot, as plaintiffs suggest, read Paragraph 22 in a vacuum.  Accordingly, considering the lease terms as a whole, the provisions contained within the leases are clear and unambiguous.  Giving the terms of the leases their ordinary meaning, the habendum clauses provided a primary term of five years, followed by the secondary term for "so much longer thereafter as oil, gas, and/or coalbed methane gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the judgment of [Chesapeake]."  Further, Paragraph 22 relates to the payment for that five year term, identifying the lease as "a paid up lease."  That means that no further rental payments are due during that primary term of five years.  Because of that, the plaintiffs' claims lack merit, and thus Paragraph 22 does not alter the duration of the lease found under the habendum clause.  Therefore, based on the record before this Court, no issues of material fact exist.  Based on the law and reasons provided above, Chesapeake's motion for summary judgment is granted.

V. Conclusion

For the reasons described above, Chesapeake Appalachia, L.L.C.'s motion for summary judgment (ECF No. 31) is GRANTED. Accordingly, all other pending motions are hereby DENIED AS MOOT. Further, it is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    January 26, 2015

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE